# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIMMY GONZALES,

      Plaintiff,

vs.                                                                                              No. 00cv0866 WJ/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Gonzales') Motion to Reverse or Remand the Administrative Agency Decision, filed April 10, 2002. The Commissioner of Social Security issued a final decision denying Gonzales' application for supplemental security income. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and recommends that it be GRANTED.

Gonzales, now fifty-three years old, filed his applications for supplemental security income on July 26, 1996, alleging disability since that same date, July 26, 1996, due to back and neck pain and "mental problems." He has a ninth grade education and past relevant work as a laborer. The Commissioner denied Gonzales' application for supplemental security income both initially and on reconsideration. On September 21, 1998, the Commissioner's Administrative Law Judge (ALJ)

---

[1] On November 9, 2001, Jo Anne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

held a hearing at which Gonzales appeared *pro se*. On January 7, 1999, the ALJ denied benefits, finding Gonzales had severe impairments of anxiety NOS, antisocial personality disorder, and cervical spondylolysis but did not have an "impairment or combination of impairments which [met] the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart p, Appendix1)." Tr. 11. The ALJ also found Gonzales' subjective complaints were "credible only to the extent that he had mild pain and that his ability to interact appropriately with others was limited, but that this limitation would not preclude all substantial gainful activity." Tr. 14. The ALJ further found Gonzales retained the residual functional capacity (RFC) to perform the exertional demands of light work. *Id.* In addition, the ALJ found the evidence supported a finding that Gonzales was not able to sit or stand for longer than two hours, and had to make postural changes between sitting and standing every two hours. *Id.* Finally, the ALJ found Gonzales had significant non-exertional limitations which made it impossible for him to perform tasks requiring contact with the public, close vision, or the ability to read or write reports well. *Id.* Gonzales filed a Request for Review of the decision by the Appeals Council. On April 17, 2000, the Appeals Council denied Gonzales' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Gonzales seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f) and 416.920 (a-f). The sequential evaluation process ends if, at any

step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Gonzales makes the following arguments: (1) the ALJ failed to fully develop the record; (2) the ALJ failed in his RFC assessment; and (3) the ALJ failed to fully evaluate his mental impairments.

The Court recognizes that "[a]lthough a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dep't of Health and Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993). "This duty exists even when the claimant is represented by counsel."[2] *Id.* Section 404.1512(d) states that the Commissioner will make "every reasonable effort" to help a claimant get records from his or her medical sources. 20 C.F.R. § 404.1512(d).

---

[2] Although Gonzales appeared *pro se* at the administrative hearing, he was represented by William P. Gordon, Esq. at the early stages of the administrative process. Tr. 23, 52, 54. On March 17, 1997, in response to Mr. Gordon's request for an administrative hearing, the Commissioner advised Mr. Gordon of his responsibility for ensuring that the record be complete before sending the case to the ALJ. Tr. 54.

According to Gonzales the ALJ did not obtain complete medical records. In support of this contention, Gonzales claims "[t]here are no records from St Martins contained in the file and the record is devoid of any suggestion that either the Social Security administration or the ALJ made **any** attempt to obtain these records." Mem. Br. in Supp. of Pl.'s Mot. to Reverse or Remand at 7. Gonzales claims the ALJ had a duty to request these records. However, as Gonzales points out, the reference to St. Martins was made during a visit by Gonzales to the UNM Mental Health Center on December 9, 1994. Tr. 119. The notes indicate Gonzales had a substance abuse counselor at St. Martins. *Id.* The record also indicates Gonzales was a recovering alcoholic. In his application for SSI and at the administrative hearing, Gonzales was clear that he was not having problems with alcohol abuse at that time. Tr. 167. Because Gonzales was represented by counsel prior to the administrative hearing, the ALJ was entitled to rely on Gonzales' counsel to ensure that the record be complete. *Cf. See Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994)(when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored).

Gonzales also contends the Commissioner failed to request the records from UNM Mental Health Center. However, the record reflects that on November 26, 1996, DDS requested records from UNM Medical Center's Medical Records department for the time period of 1996. Tr. 85. The record contains medical records from UNM Mental Health Center from 1974,1976, 1981, 1982, 1992 and 1994. Tr. 119-134. Gonzales' counsel claims there are no records from1982 to 1992 but doesn't allege Gonzales was ever seen during that time frame. Gonzales also failed to demonstrate how records from 1982 to 1992 would impact the expert opinions of Drs. Davis,

5

MacLean, and Adams or Dr. Gucher's Mental Residual Functional Capacity Assessment. Dr. MacClean reported Gonzales "does not see work as part of this process" and "When I attempted to talk to him about even limited work he appeared to see it as unimaginable." Tr. 100-104. Notably, Dr. MacClean diagnosed Gonzales as suffering from anxiety disorder, NOS with post-traumatic features by history and probable overlay of symptom magnification and embellishment. Tr. 104. Dr. Davis opined Gonzales was malingering. Tr. 106. Dr. Adams reported Gonzales refused to take the WAIS-III, argued about the purpose of the evaluation, criticized prior evaluations and his main complaint was that he had been denied Social Security benefits. Tr. 135. Dr. Adams opined Gonzales "just wants to find a doctor who will say the right thing to get him on Social Security." *Id.* Dr. Adams reported it was his belief that Gonzales would not be more cooperative at future evaluations. *Id.* Dr. Gucher's Mental RFC assessment indicated Gonzales was capable of simple non-public substantial gainful activity. Tr. 118. For the foregoing reasons, the Court finds that the ALJ fulfilled his duty to develop the record.

Next, Gonzales contends the ALJ erred in his RFC assessment. Gonzales claims the ALJ erroneously concluded he could perform the jobs of *Mexican Food Maker* and *Mexican Food Machine Tender*. Tr. 15. Citing Social Security Ruling 83-10, Gonzales contends this was error because light work requires the ability to stand or walk up to six hours out an eight hour day. The Commissioner counters that the present definition of light work does not require a specific number of hours be spent in a standing position. Social Security Ruling 83-10 provides as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category

> when it requires a good deal of walking or standing– the primary difference between sedentary and most light jobs.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two- thirds of a workday, the full range of light work requires standing or walking, **off and on**, for a total of **approximately** 6 hours of an 8-hour workday.

Social Security Ruling 83-10,1983 WL 31251 at *4 (emphasis added). Additionally, Social Security Ruling 83-12 guides the ALJ in determining a claimant's RFC when there is a need to alternate sitting and standing. Social Security Ruling 83-12 provides as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for light work.
>
> \* \* \* \* \* \* \*
>
> There are some jobs in the national economy-- typically professional and managerial one--  in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

Social Security Ruling 83-12, 1983 WL 31253 *3. In this case, the ALJ consulted with a vocational expert. The vocational expert opined the jobs of *Mexican Food Maker* and *Mexican*

*Food Machine Tender* would accommodate Gonzales' limitation of needing to alternate sitting and standing. Tr. 175. Although Gonzales claims the vocational expert did not discuss whether these jobs would accommodate his limitation, the vocational expert's testimony at the administrative hearing indicates he did. Specifically, after the ALJ listed all of Gonzales' limitations in his hypothetical to the vocational expert, the vocational expert, in discussing different occupations, commented "the cleaning jobs may not allow the occasional sitting after two hours. I'm going to add the position of Mexican food maker hand." *Id.* From this testimony, it appears that the vocational expert took into account Gonzales' limitation of needing to alternate sitting and standing. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC finding.

Finally, Gonzales contends the ALJ failed to fully evaluate his mental impairments. The Court disagrees. On November 6, 1996, Dr. Catherine A. MacLean, a clinical psychologist evaluated Gonzales. Tr. 100-104. Dr. MacLean administered the Wechsler Adult Intelligence Scale-Revised, the Wide Range Achievement Test-Revision-3 (spelling and arithmetic), the Peabody Individual Achievement Test (reading comprehension) and conducted a clinical interview. Tr. 102. Gonzales scored a "Full Scale WAIS-R IQ of 76 (Verbal IQ 75 and Performance IQ 79). Although Dr. MacClean found this score "indicat[ed] current functioning in the Borderline range which [was] consistent with impressions in interview," nonetheless, Dr. MacLean followed this statement with the following observations, "He does not put much energy into his work and gives up a bit prematurely so that even his performance on simple practical tasks tends to be poor." Tr. 103. Dr. MacLean further noted "The possibility that certain of his symptoms are being magnified at this time can not be ruled out." Tr. 104. Dr. MacLean

8

diagnosed Gonzales with anxiety disorder, NOS, with post-traumatic features by history and probable overlay of symptom magnification and embellishment. *Id.*

On November 26, 1996, Dr. Rosalie Davis, a certified psychologist, evaluated Gonzales and opined that "frankly he did seem a malingerer." Tr. 105. Although Dr. Davis opined Gonzales was a "potential molester and would probably not fit well in the work world because his preoccupation would certainly keep him from functioning to his fullest capacity," Dr. MacLean noted this problem as a "self-reported distant history of pedophilia." Dr. MacLean recommended Gonzales be referred for a one to four session therapy evaluation to ascertain the risk of sexual acting out but opined that it appeared this concern was remote given Gonzales' continued abstinence. Tr. 103.

On July 21, 1998, Dr. Carl B. Adams, a psychologist, attempted to evaluate Gonzales. Dr. Adams reported Gonzales was belligerent, uncooperative and refused to take the WAIS-III. Dr. Adams opined Gonzales "just wants to find a doctor who will say the right thing to get him on Social Security." Tr. 135.

In his decision, the ALJ discussed Dr. MacLean's evaluation, Dr. Adams' consultation and cited to UNM Mental Health Center's clinical records. The ALJ also found Gonzales had a history of refusing mental health treatment. Tr. 12. Substantial evidence supports this finding.

Failure to follow a prescribed course of treatment, without good reason is grounds for denial of disability benefits, 20 C.F.R. § 416.930(b), and can be the basis for discrediting claimant's subjective complaints. *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ also found "there is objective evidence of record which demonstrates that

the claimant was a malingerer who embellished his symptoms." Tr. 13. Substantial evidence also supports this finding. Based on the record as a whole, the Court finds that the ALJ adequately assessed Gonzales' mental impairments.

Gonzales' also contends the ALJ failed to consider his "low mental functioning" in assessing his RFC. According to Gonzales, his intellectual functioning is not within the lowest 1/3, excluding the bottom10% required for performance of the *Mexican Food Maker* and *Mexican Food Machine Tender* jobs the vocational expert opined he was capable of performing. The Commissioner, in her reply, acknowledged that these jobs "could be learned in thirty days or less and had a general learning ability and verbal aptitude allowing for the lowest 1/3 of the population, excluding the bottom 10 %." Br. in Supp. of Commissioner's Decision at 9. However, Gonzales points out that an IQ of 76 is at the **5th percentile** and therefore his IQ is not within the lowest 1/3, excluding the bottom 10% but, rather, is within the lowest 10%, thus falling below the range required for performance of the jobs of *Mexican Food Maker* and *Mexican Food Machine Tender*. See Pl.'s Ex. A (IQ Score Equivalents of Sums of Scaled Scores: Full Scale). The Court will remand for the limited purpose of having the ALJ reconsider whether Gonzales can perform the jobs of *Mexican Food Maker* and *Mexican Food Machine Tender* given that Gonzales' IQ is not within the general learning ability and verbal aptitude required for performance of these jobs. The ALJ may order another psychological consultation in order to have Gonzales' IQ tested if he finds this necessary and consult with the vocational expert.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. The Court finds that remand is necessary to allow the ALJ to reconsider

whether Gonzales can perform the jobs of *Mexican Food Maker* and *Mexican Food Machine Tender* given that Gonzales' IQ is not within the general learning ability and verbal aptitude range required for performance of these jobs.

	**JOE H. GALVAN**
	**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

	Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.